UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WON S. CHOI & KAP YEOP JUN,<br><br>Plaintiffs,<br><br>v.<br><br>DAMUL CORP., et al.,<br><br>Defendants. | Civil Action No. 12-2440 (JLL)<br><br>REPORT AND<br>RECOMMENDATION |

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendants Damul Corp. ("Damul"), Gwanggaetou Development Corp. ("GDC"), and Dong Ouk Kim ("Kim") (collectively "Defendants") to vacate the entry of default judgment entered against them on August 21, 2012 and to dismiss Plaintiffs Won Choi ("Choi") and Kap Yeop Jun's ("Jun") (collectively "Plaintiffs") Complaint for lack of personal jurisdiction. Pursuant to Local Civil Rule 72.1, the Honorable Jose L. Linares, United States District Judge, referred the motion to this Court for Report and Recommendation. For the reasons set forth below, the Undersigned respectfully recommends that Defendants' motion be granted. Specifically, the Undersigned recommends that the default judgment entered against Defendants be vacated and Plaintiffs' Complaint be dismissed without prejudice.

## II. BACKGROUND

### A. Factual Background

This action arises from investments made by Choi and Jun, a husband and wife, in Damul

and GDC, which were owned by Kim.[1]  Plaintiffs allege that in July 2006, Defendants approached Plaintiffs, representing to Plaintiffs that Defendants were seeking capital to purchase real estate in New York, develop or improve the properties, and then sell those properties for a profit.  See Compl., ECF No. 1 ¶¶ 1, 9.

In total, Plaintiffs invested $350,000 in GDC and Damul.  Initially, on July 12, 2006, Choi issued two checks payable to GDC totaling $50,000.  Id. at ¶ 11.  On that date, Chang Kyu Lee ("Lee"), who represented to be the "manager" of GDC, executed an acknowledgement that made clear these funds were a loan to GDC.  See Ex. B to Compl.  Later, Choi contributed $100,000 to the down payment for the purchase of 325 Fifth Ave., Unit 15C.  Compl. ¶ 12.  Finally, on September 1, 2006, Jun issued two checks totaling $200,000 to Damul.  Id. ¶ 13.  On that date, Kim executed a personal guarantee for Plaintiffs' $350,000 investment.  Kim allegedly guaranteed not just a return of Choi's loan, but also a 20% profit.  See id.; see also Ex. D. to Compl.  Importantly for the purposes of the instant motion, the parties' submissions and the Complaint are silent as to where all of these events occurred.  See Compl., ECF No. 1; Certification of Won S. Choi ("Choi Cert."), ECF No. 14-1.  As Defendants observe, the properties are located in New York.  See Defs. Br., ECF No. 16, at 2.  However, it remains unclear where the loan transactions and execution of guarantees occurred.

**B. Procedural History**

Plaintiffs filed their Complaint on April 25, 2012.  Compl., ECF No. 1.  On June 19, 2012, Plaintiffs moved for entry of default against Kim for failing to answer or otherwise move.

---

[1] Plaintiffs describe Kim as the "owner" of Damul and GDC.  See Compl., ECF No. 1 ¶ 8.  Defendants describe Kim as the "principal shareholder" of the corporations.  See Affidavit of Dong Ouk Kim in Support of Motion to Vacate Default Judgment and Dismiss Compaint ("Kim Aff."), ECF No. 16-2 ¶ 10.  Damul and GDC were dissolved on January 25, 2012 and July 27, 2011, respectively.  Id. ¶¶ 3-4.

2

See ECF No. 7.  Default was entered against Kim on June 20, 2012.  On July 6, 2012, Plaintiffs moved for entry of default against Damul and GDC.  See ECF No. 11.  Default was entered against these defendants on August 21, 2012.

On August 9, 2012, Plaintiffs moved for default judgment against all defendants.  See Mot. for Default J., ECF No. 14.  On August 21, 2012, the Honorable Jose L. Linares granted Plaintiffs' motion and entered default judgment against Defendants in the amount $330,000.00.[2]  Order, ECF No. 15.  More than a year later, on October 8, 2013, Defendants moved to vacate the default judgment and dismiss the Complaint, arguing that this Court lacks personal jurisdiction over Defendants.  See Mot. to Vacate, ECF No. 16.  On October 29, 2013, Plaintiffs' counsel filed a response to Defendants' motion.  See ECF No. 17.[3]

### III. ANALYSIS

#### A. Federal Rule of Civil Procedure 60(b)(4)

This motion is brought pursuant to Federal Rule of Civil Procedure 60(b)(4), which provides relief from a final judgment when "the judgment is void."  A judgment is void if the court that entered the judgment lacks personal jurisdiction as to the defendant against which the judgment was entered.  Arpaio v. Dupre, Civ. No. 12-3619, 2013 WL 2150869, at *3 (3d Cir. May 20, 2013).  Unlike a motion to set aside a final judgment due to mistake pursuant to Federal Rule of Civil Procedure 60(b)(1), in which the Court would perform a three-factor balancing test

---

[2] While Plaintiffs invested $350,000 in Damul and GDC, Kim repaid $20,000 of this investment.  See Choi Cert., ECF No. 14-1 ¶ 21.

[3] Plaintiffs' letter can arguably be categorized as an opposition to the motion, in that Plaintiffs assert that the "Judgment would firmly stand, in view of the submissions Plaintiffs previously submitted to the Court[.]"  See ECF No. 17.  If this letter is an opposition, however, it is untimely as any opposition to the instant motion was to have been filed on or before October 21, 2013.  The Court need not determine whether it should consider this untimely submission, however, as Plaintiffs' letter simply attaches Plaintiffs' prior filings in this case to support this Court's exercise of jurisdiction over Defendants.  Id.

to determine whether the judgment should be aside, the Court must instead only consider the merits of Defendants' argument that the Court lacks personal jurisdiction over them. Id.; see also Aurum Asset Managers, LLC v. Bradesco Companhia de Seguros, 441 F. App'x 822, 824-25 (3d Cir. 2011) ("defendants who believe that the courts lack jurisdiction are 'always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding'") (quoting Budget Blinds, Inc. v. White, 536 F.3d 244, 259 (3d Cir. 2008)).

### B. Personal Jurisdiction

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure allows a federal district court to "exercise[] personal jurisdiction according to the law of the state where it sits." O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007); see Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007). Normally, this is a two-part inquiry; there must be a state statutory basis for exercising jurisdiction over a non-resident defendant as well as a constitutional basis whereby the minimum contacts between the non-resident and the forum state satisfy due process under the Fourteenth Amendment. See Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). New Jersey's long-arm rule, however, extends jurisdiction over non-resident defendants to the full extent permitted by the United States Constitution. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); see also N.J. Ct. R. 4-4(b)(1); YA Global Inv., L.P. v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011) (citing Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971)). Therefore, in New Jersey, inquiry into whether personal jurisdiction exists over a non-resident defendant concerns only questions of due process under the Constitution. Carteret, 954 F.2d at 145. Personal jurisdiction may be exercised under two distinct theories: general jurisdiction or specific jurisdiction. O'Connor, 496 F.3d at 317.

In the context of a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of persuasion to establish that jurisdiction is proper and must provide facts based upon competent evidence, such as affidavits. Metcalfe, 566 F.3d at 330; see also Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984) (explaining that, unlike a motion for failure to state a claim, a plaintiff may not rely on pleadings alone for contests of personal jurisdiction). In that context, a plaintiff's burden of proof depends on whether an evidentiary hearing is held. Metcalfe, 566 F.3d at 330–31; see also Lasala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474, 476 (3d Cir. 2011). If a court conducts an evidentiary hearing, a plaintiff must prove personal jurisdiction by a preponderance of the evidence. Carteret, 954 F.2d at 142 n.1, 146; see also Lasala, 410 F. App'x at 476. If no evidentiary hearing takes place a plaintiff need only offer a prima facie case for personal jurisdiction, and a court must accept a plaintiff's allegations as true and construe disputed facts in its favor. O'Connor, 496 F.3d at 316 (citing Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)); see also id. at 323 (stating that "[w]e accept [plaintiff's jurisdictional] statement as true because the District Court held no evidentiary hearing); Lasala, 410 F. App'x at 476–77.

Earlier this year, the United States Court of Appeals for the Third Circuit recognized that the circuit courts are divided as to whether, in the context of a motion to vacate a default judgment under Rule 60(b)(4), the burden is shifted to the defendant to demonstrate the Court lacks personal jurisdiction over it. See Arpaio v. Dupre, 2013 WL 2150869, at *4 n.2; see also On Track Transp., Inc. v. Lakeside Warehouse & Trucking Inc., 245 F.R.D. 213, 223 (E.D. Pa. 2007) ("However, Rule 60 is silent, and the caselaw is unclear, on which party bears the burden after a judgment has been entered."). The Court does not need to address this issue because Plaintiffs, in the first instance, fail to make a prima facie showing of personal jurisdiction over

5

Defendants and, separately, Defendants have offered uncontested evidence that demonstrates the Court cannot, based upon the evidence before it, exercise personal jurisdiction over Defendants.

   1. **General Jurisdiction**

General personal jurisdiction exists when the evidence shows the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). Put differently, it must be the case that "the defendant has purposefully directed its activities toward residents of the forum state or otherwise purposefully availed itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (internal quotations and citations omitted). "The threshold for establishing general jurisdiction is very high, and requires a showing of extensive and pervasive facts demonstrating connections with the forum state." Clark Capital Mgmt. Grp., Inc. v. Navigator Invs., LLC, Civ. No. 06-2334, 2006 WL 2707392, at *4 (E.D. Pa. 2006) (quoting O'Connor v. Sandy Lane Hotel Co., Ltd., Civ No. 04-2436, 2005 WL 994617, at *2 (E.D. Pa. Apr. 28, 2005)); see Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) ("However, general jurisdiction requires 'a very high threshold of business activity.'") (quoting Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 891 n. 2 (3d Cir. 1981)). If continuous and systematic contacts with the forum state are shown, personal jurisdiction is proper even if the cause of action arises from non-forum contacts. Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984).

Defendants' contacts, as alleged by Plaintiffs, are limited to the single business relationship between Plaintiffs and Defendants. Plaintiffs do not offer any evidence of continuous and systematic contacts between Defendants and this forum. Defendants, on the

other hand, have offered the following uncontested statements regarding their lack of continuous and systematic contacts with the state: (1) Kim, since moving to the United States, has always resided in New York; (2) Damul and GDC were both New York corporations and New York was their principal places of business; (3) Kim has never owned a bank account or held any assets in New Jersey; (4) Kim never visited Plaintiffs in New Jersey; and (5) neither Damul nor GDC owned property, had a bank account, had an office, or was licensed to transact business in New Jersey. See Affidavit of Dong Ouk Kim in Support of Motion to Vacate Default Judgment and Dismiss Compaint ("Kim Aff."), ECF No. 16-2 ¶¶ 5-12.

As Plaintiffs have offered no evidence to either contradict Kim's Affidavit or affirmatively demonstrate the type of contacts that would meet the "high" threshold for establishing general personal jurisdiction, the Court concludes that it cannot exercise general personal jurisdiction over Defendants.

2. **Specific Jurisdiction**

   a. **Legal Standard**

Specific personal jurisdiction exists when the relationship among the forum, the defendant, and the cause of action are such that the defendant purposely avails itself of the forum's laws, the cause of action is related to or arises out of the defendant's contacts with the forum, and the defendant "should reasonably anticipate being hauled into court there." Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221–22 (3d Cir. 1992) (internal citations and quotations omitted). In the Third Circuit, a three-part inquiry determines whether specific personal jurisdiction exists:

> First, the defendant must have purposefully directed his activities at the forum. Second, the plaintiff's claim must arise out of or relate to at least one of those specific activities. Third, courts may consider additional factors to ensure that the assertion of

7

> jurisdiction otherwise comports with fair play and substantial justice.

Marten, 499 F.3d at 296 (internal quotations marks and citations omitted); accord O'Connor, 496 F.3d at 317.

Under the first step of the inquiry, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); accord O'Connor, 496 F.3d at 317. Although "[p]hysical entrance is not required, . . . . what is necessary is a deliberate targeting of the forum." O'Connor, 496 F.3d at 317. Accordingly, "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." Id. (quoting Hanson, 357 U.S. at 253); see also Osteotech, Inc. v. GenSci Regeneration Scis., Inc., 6 F. Supp. 2d 349, 353 (D.N.J. 1998) (stating that "[a] single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state"). A single act, however, can support jurisdiction if that contact creates a substantial connection with the forum and is connected with the injury sued upon. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985). Telephone calls, mail, or electronic communications sent by a defendant into the forum may also count toward minimum contacts that support jurisdiction, see Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993), but they do not trigger personal jurisdiction unless they show purposeful availment. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003). Moreover, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." O'Connor, 496 F.3d at 317.

Under the second step of the inquiry, a plaintiff's "claims must also 'arise out of or relate to' at least one" purposefully directed contact. O'Connor, 496 F.3d at 318 (quoting

Helicopteros, 466 U.S. at 414). The Court of Appeals for the Third Circuit has not adopted a definitive approach to this step and has avoided "categorical determinations." O'Connor, 496 F.3d at 320. For a purposefully-directed contact to arise out of or relate to a claim, the contact must not only be a but-for cause of the claim but must also be "a closer and more direct causal connection" such that "[w]ith each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations." Id. at 323. The relatedness requirement "must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." Id.

Under the third step of the specific personal jurisdiction inquiry, a court must "consider whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'" O'Connor, 496 F.3d at 324 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Specifically, "[t]he existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477). This is a heavy burden for the defendant to meet. Grand Entm't Grp., 988 F.2d at 483. When considering jurisdictional reasonableness, a court considers several factors, including: (1) the burden on the defendant; (2) the plaintiff's interest in convenient and effective relief; (3) the forum's interest in adjudicating the dispute; (4) the interstate or international judicial system's interest in obtaining an efficient resolution; and (5) the procedural and substantive interests of other countries. O'Connor, 496 F.3d at 324 (internal citations omitted).

When analyzing specific personal jurisdiction in the context of contractual claims, the Court "must consider the totality of the circumstances, including the location and character of the

contract negotiations, the terms of the contract, and the parties' actual course of dealing."
Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001); accord O'Connor, 496 F.3d at 320.
Specifically, "[i]n contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." Id. at 320 (quoting Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)). Physical presence in the forum can constitute purposeful availment and as such "[a]ctual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." Gen. Elec., 270 F.3d at 150; see also Telcordia Tech. Inc. v. Telkoon SA Ltd., 458 F.3d 172, 177 (3d. Cir. 2006). Physical presence, however, is no longer determinative, given modern commercial arrangements employing mail and wire communications, and becomes less determinative where the parties have established a long-term relationship. Telcordia, 458 F.3d at 177. Moreover, who initiated the relationship is not significant "[i]n the commercial milieu"; rather "the intention to establish a common venture extending over a substantial period of time is a more important consideration." Gen. Elec., 270 F.3d at 151. Accordingly, personal jurisdiction does not arise merely where there is a contract and "informational communications." See Remick, 238 F.3d at 256. But personal jurisdiction can arise where the non-resident defendant used mail and telephone communications to initiate the business relationship leading up to the contract, knew that the plaintiff-resident would perform contracted services in the form, sent payments to the plaintiff-resident, and engaged in extensive post-contract communications with the plaintiff. See Remick, 238 F.3d at 256–57 (also noting that agreement indicated purposeful availment by suggesting that parties were protected by the law of the forum).

Additionally, even if minimum contacts do not exist under the "traditional" test outlined

above, because the Plaintiffs have brought intentional tort claims, the Court must consider whether the so-called Calder effects test "can change the outcome." IMO Indus., 155 F.3d at 259–60. Under the effects test, "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." Id. at 260. To establish minimum contacts under the Calder effects test in the Third Circuit, a plaintiff must show that:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3) The defendant expressly aimed its tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Marten, 499 F.3d at 297 (citing IMO Indus., 155 F.3d at 265–66).

Under the "brunt of the harm" element, the Court of Appeals for the Third Circuit has found that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." IMO Indus., 155 F.3d at 263 (agreeing with ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617 (4th Cir. 1997); Far West Capital, Inc. v. Towne, 46 F.3d 1071 (10th Cir. 1995); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir. 1988)).

Under the "expressly aimed" element, "the plaintiff has to demonstrate '[that] the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" Marten, 499 F.3d at 298 (quoting IMO Indus., 155 F.3d at 266). However, "[i]f a plaintiff fails to show that the defendant manifested behavior

11

intentionally targeted at and focused on the forum, the plaintiff fails to establish jurisdiction under the effects test." Marten, 499 F.3d at 298 (internal citations and quotations omitted). For example, "[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement." IMO Indus., 155 F.3d at 265.

Generally, a court analyzes specific personal jurisdiction on a defendant-by-defendant and claim-by-claim basis. Miller, 384 F.3d at 95 n.1 (citing Calder, 465 U.S. at 790); see also Marten, 499 F.3d at 296 (noting that claim-by-claim analysis occurs because specific jurisdiction depends on the relationship between the claims and contacts); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (noting that a court may have personal jurisdiction over a particular defendant for some claims but not others). Certain situations, however, may allow a court to assess defendants together, assess claims together, or both. See, e.g., Carteret, 954 F.2d at 145 n.6 (evaluating defendants together because they are liable to each other through their partnership); O'Connor, 496 F.3d at 318 n.3 (evaluating claims together because of factual overlap and one claim was derivative of another); Miller, 384 F.3d at 97–100 (evaluating defendants and related claims together); see also Remick, 238 F.3d at 255–56 (noting that it may not be necessary to do a claim-by-claim analysis in every multiple-claim case). Here, the Court will assess the Defendants together for each claim because of the relationship between the three defendants (Kim was the principal shareholder of Damul and GDC, a single guarantee was signed by Kim for Plaintiffs' investments in both Damul and GDC, and Kim controlled both companies' bank accounts) and because there is a factual overlap of the claims asserted against them. See, e.g., O'Connor, 496 F.3d at 318 n.3 (evaluating claims together because of factual overlap and one claim was derivative of another); see also Kim Aff., ECF No. 16-2 ¶ 10; Choi

12

Cert., ECF. No. 14-1 ¶¶ 5, 11, 13-18.

   b. **Application**

Here, the first cause of action contained in the Complaint is for breach of contract. See Compl., ECF No. 1 ¶¶ 17-20. As addressed *supra*, as to contract claims, the Court may examine the terms of the agreement, the character and place of prior negotiations, contemplated future consequences, and the parties' course of dealing to determine whether jurisdiction exists. See Mellon Bank, 960 F.3d at 1223. While Plaintiffs reference communications/negotiations between Plaintiffs and Defendants, Plaintiffs do not detail where these events occurred. See Choi Cert., ECF No. 14-1 ¶¶ 5-6. Similarly, Plaintiffs do not state where either Lee's acknowledgment or Kim's personal guarantee were signed. Id. at ¶ 8, 11. Defendants, on the other hand, have submitted an affidavit in which Kim represents that he never visited Plaintiffs in New Jersey. See Kim Aff., ECF No. 16-2 ¶ 9; see also Defs. Br., ECF No. 16-1, at 3 ("Kim, Damul, and GDC, never entered the State of New Jersey to conduct business with plaintiff. All transactions occurred within the State of New York."). Therefore, the evidence before the Court contains no suggestion that Defendants traveled to, or sent communications into, New Jersey during the negotiation, execution, or pendency of their agreement(s).

Additionally, it appears that the subject matter of the parties' agreement(s) and the ongoing rights and obligations envisioned by the parties relate to New York, not New Jersey. See id. at ¶ 12.

In summary, it appears that Plaintiffs simply rely upon the fact that Defendants contracted with New Jersey residents to support this Court's exercise of jurisdiction over Defendants. It is black letter law, however, that a plaintiff's residence, by itself, is insufficient to establish personal jurisdiction. See O'Connor, 496 F.3d at 317 ("And contacts with a state's

citizens that take place outside the state are not purposeful contacts with the state itself."); Porthault NA LLC v. Cadeau Express Inc., Civ. No. 09-4431, 2009 WL 4573598, at *4 (D.N.J. Dec. 2, 2009) (finding specific jurisdiction did not exist when defendant did not reach out to New Jersey or visit New Jersey during contractual negotiations); see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 338 (3d Cir. 2009) (Stapleton, J., *dissenting*) ("My analysis begins with an indisputable proposition. In applying these principles, it 'is well established ... that a nonresident's contracting with a forum resident, without more, is insufficient to establish the 'minimum contacts' required for an exercise of personal jurisdiction over the nonresident.'") (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir.1993)).

In fact, Plaintiffs do not even assert that Defendants knew or should have known that Plaintiffs were New Jersey residents. If it has not been shown that Defendants knew or should have known that their activities were "purposefully directed" at New Jersey residents, it cannot be said that Defendants had "fair warning" that they could be hauled before a New Jersey tribunal because they were purposefully availing themselves of the opportunity of doing business in New Jersey. Compare Sperber v. Elwell, Civ. No. 13-768, 2013 WL 2934049, at *3 (D.N.J. June 13, 2013) (noting that under both the "traditional" and Calder jurisdiction tests, the Third Circuit has emphasized the intentionally of the non-resident targeting the forum and granting defendant's motion to dismiss because plaintiff failed to demonstrate defendant knew its conduct was directed at New Jersey) and Live Face on Web, LLC v. iSpeakVideo.com, Civ. No. 11-4573, 2012 WL 1867548, at *6 (E.D. Pa. May 22, 2012) (granting motion to dismiss when plaintiff had "not even produced evidence that any of the defendants knew that [plaintiff's] principal place of business was in [the forum]") with Copeland Surveying, Inc. v. Richard

14

Goettle, Inc., Civ. No. 06-1189, 2006 WL 1644870, at *5 (D.N.J. June 12, 2006) (finding personal jurisdiction existed when defendant knowingly chose to contract with a New Jersey company).

Plaintiffs also bring negligence claims against Defendants. See Compl., ECF No. 1 ¶ 33-36. As no evidence has been presented that the underlying negligent or reckless actions arose out of or relate to Defendants' contacts with or activities in New Jersey, the Court also cannot exercise personal jurisdiction over Defendants as to that cause of action. See Saudi v. Acomarit Maritime Servs., S.A., 114 F. App'x 449, 453 (3d Cir. 2004). Plaintiffs remaining causes of action similarly fail as no evidence has been presented that demonstrates those causes of action arise out of Defendants' contacts with this forum.

Because Plaintiffs also bring intentional tort claims against Defendants, the Court must also examine Defendants' contacts under the Calder effects test. As detailed above, under the Calder effects test, the Court must determine whether "the defendant knew the plaintiff would suffer the brunt of the harm caused by the tortious activity in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" Marten, 499 F.3d at 298 (quoting IMO Indus., 155 F.3d at 266). Again, as there is insufficient evidence to conclude that Defendants even knew Plaintiffs were New Jersey residents, Defendants cannot be said to have known Plaintiffs would suffer the brunt of the harm in New Jersey.

Furthermore, even if Defendants knew Plaintiffs were New Jersey residents and Plaintiffs suffered the brunt of the harm in New Jersey, to exercise personal jurisdiction over Defendants, the Court would still need to determine Defendants "expressly aimed their [tortious conduct]" at New Jersey. Id. at 299; see Wolstenholme v. Bartels, 511 F. App'x 215, 220 (3d Cir. 2013)

15

("[p]laintiff's residence in [the forum] is inconsequential to the case at issue, as [plaintiff] has failed to show that [the defendant] and his alleged scheme (which concerned transactions and companies outside of [the forum]) somehow benefited from [plaintiff's] living in [the forum], or received some protection from that forum's laws"); IMO Indus., 155 F.3d at 264 (noting that a defendant must "manifest behavior intentionally targeted and focused on the forum" and that this typically requires "some type of 'entry' into the forum state) (internal quotations omitted). Because there is no evidence before the Court suggesting Defendants expressly aimed any conduct at New Jersey, this element of the Calder effects test is not satisfied.

IV. Conclusion

For the foregoing reasons, the Court recommends that default judgment be vacated [ECF No. 15] and Plaintiffs' Complaint be dismissed. As it appears that Plaintiffs' counsel was unable to locate Plaintiffs during the pendency of the instant motion and, therefore, Plaintiffs were unable to assist counsel in providing a response to Defendants' motion, the Undersigned recommends that Plaintiffs' Complaint be dismissed without prejudice.[4]

Dated: December 11, 2013            */s Michael A. Hammer*  
                                                                **United States Magistrate Judge**

---

[4] Plaintiffs' counsel represents to the Court that, upon receiving the instant motion, he attempted to contact Plaintiffs, but Plaintiffs have relocated and not provided a forwarding address. See October 29, 2013 letter, ECF No. 17. However, as of the date of this Report and Recommendation, Plaintiffs' counsel has provided no indication that he has been able to establish contact with Plaintiffs. If Plaintiffs are located, they may be able to, in their refiled complaint, provide the Court with sufficient evidence to demonstrate the appropriateness of the Court exercising jurisdiction over Defendants.